[No. A040834. First Dist., Div. Two. May 3, 1990.]

ERIC WASHINGTON, a Minor, etc., et al., Plaintiffs and Respondents, v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and Appellant.

COUNSEL

Louise H. Renne, City Attorney, Kimberly A. Reiley, Chief Deputy City Attorney, and John A. Peak, Deputy City Attorney, for Defendant and Appellant.

Hoberg, Finger, Brown, Cox & Molligan, James Geagan and Daniel U. Smith for Plaintiffs and Respondents.

OPINION

**PETERSON, J.**—The City and County of San Francisco (the City) appeals from a judgment entered after jury verdict awarding respondents damages in their wrongful death action. The City claims that it is immune from liability as a matter of law, that the jury was improperly instructed, and that the evidence was insufficient to support the jury's verdict. We disagree and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Henry Washington was killed on June 28, 1982, in a motor vehicle accident in San Francisco. The motorcycle on which Washington was riding collided with a car driven by Carl Tani.

The accident occurred at the intersection of 13th and Folsom Streets. The Central Freeway, built and maintained by the State of California, runs above 13th Street at that location. It is supported by metal pillars on both sides of 13th Street and along the median strip between the eastbound and westbound lanes. The shadow of the freeway falls on 13th Street, and the pillars on the median obstruct the view of drivers coming toward one another.

On the morning of the accident, Tani was driving to work eastbound on 13th Street. He got into the lane closest to the pillars in order to turn left (north) onto Folsom Street. Before beginning his turn, Tani looked "between the pillars" for oncoming traffic westbound on 13th Street. He believed there was none and began his turn. Washington, riding a motorcycle westbound on 13th Street, collided with Tani's car. Washington was thrown from the motorcycle and suffered multiple traumatic injuries. He died within five minutes from a massive loss of blood. He was 52 years old.

In March 1983, Washington's spouse Ernestine and his surviving minor dependents Eric and Lisa, through Ernestine as guardian ad litem, filed a complaint for wrongful death against the City and others. The matter was tried by a jury in August and September 1987 which, after a 10-day trial, rendered a verdict in favor of respondents resulting in a judgment against the City for the sum of $792,500. After an unsuccessful motion for new trial or in the alternative motion for judgment notwithstanding the verdict (JNOV), the City timely filed the present appeal.

## II. Discussion

On appeal, the City raises three issues. It first claims that it is immune from liability pursuant to Government Code[1] section 830.4. We disagree.

Section 830.4 is contained in that portion of the Government Code which describes and limits the liability of public entities for dangerous conditions of public property.[2] Cases interpreting this statute have held that it provides a shield against liability only in those situations where the alleged dangerous condition exists *solely* as a result of the public entity's failure to provide a regulatory traffic device or street marking. If a traffic intersection is dangerous for reasons other than the failure to provide regulatory signals

---

[1] All subsequent statutory references are to the Government Code.

[2] "A condition is not a dangerous condition within the meaning of this chapter *merely* because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code." (§ 830.4, italics added.)

or street markings, the statute provides no immunity. For example, in *Hilts v. County of Solano* (1968) 265 Cal.App.2d 161 [71 Cal.Rptr. 275], the county alleged on appeal that its motion for JNOV should have been granted by the trial court because the evidence showed it could not be liable on any basis other than the failure to provide regulatory signals for which it was provided immunity pursuant to section 830.4. (*Id.* at p. 173.) The appellate court rejected this assertion noting, "The testimony of . . . the traffic engineer, indicates that the instant intersection was dangerous *not only* because of the failure to provide warning or regulatory signs or signals *but also because* of the conjunction of other factors such as the presence of trees, the differences in elevation between the roadway grades and adjoining fields, and the method of striping the intersection. Accordingly, we cannot say as a matter of law that the immunities of [section] 830.4 . . . governed this case." (*Id.* at p. 174, italics added.)

In the present case, testimony at trial established that the danger at the intersection of 13th and Folsom Streets was not caused solely by the failure to provide regulatory traffic signals. Respondents' expert witness, David Schmidt, also essentially opined the intersection was dangerous not only because of the absence of regulatory traffic devices; but also because of the vision limitations caused by (1) the metal pillars in the middle of 13th Street, and (2) the shadow caused by the freeway above. Here, as in *Hilts*, we cannot say as a matter of law that the immunities of section 830.4 apply.

The City disputes this conclusion. ■ While acknowledging the limited protection afforded by section 830.4, it argues that it can only be subject to liability if, in failing to provide a regulatory traffic device, it created a "trap" for persons using the intersection. The City's argument appears to be based upon its reading of the cases which discuss section 830.4 and a related statute, section 830.8.[3] We note, however, that sections 830.4 and 830.8 have different purposes.

Section 830.4 exempts from the definition of "dangerous condition" found in section 830, subdivision (a)[4] a condition resulting "merely" from

---

[3] Section 830.8 provides, "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or devise (*other than one described in Section 830.4*) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." (Italics added.)

[4] " 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or

failure to provide regulatory traffic controls or definitive roadway markings. It implicitly confers a limited immunity from injury liability on a public entity if that failure is the *only* basis for fixing such liability. Where, however, the dangerous condition of public property exists for reasons *other than or in addition to* the "mere[ ]" failure to provide such controls or markings, the public entity is liable for injury therefrom if the conditions of its liability under section 835 are otherwise met.[5]

Section 830.8 was intended to prevent "the imposition of [public entity] liability based on the failure to provide traffic regulatory or warning signals or devices [*other than as described*] *in Section 830.4,* but liability may exist for failure to provide such a signal or device where the condition constitutes a trap to a person using the street or highway with due care." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1980 ed.) § 830.8, p. 289; Deering's Ann. Gov. Code (1982) § 830.8, p. 245 italics added; see *Black* v. *County of Los Angeles* (1976) 55 Cal.App.3d 920, 932-933 [127 Cal.Rptr. 916];[6] *Dahlquist* v. *State of California* (1966) 243 Cal.App.2d 208, 213 [52 Cal.Rptr. 324].)

A public entity, thus, loses its limited immunity under section 830.8 and is liable for injury where its failure to provide traffic regulatory or warning

---

adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

[5] Conditions establishing public entity liability and nonliability for injury caused by a dangerous condition of public property are set forth in sections 835 and 835.4, respectively.

Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Section 835.4 provides: "(a) A public entity is not liable under subdivision (a) of Section 835 for injury caused by a condition of its property if the public entity establishes that the act or omission that created the condition was reasonable. The reasonableness of the act or omission that created the condition shall be determined by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of taking alternative action that would not create the risk of injury or of protecting against the risk of injury. [¶] (b) A public entity is not liable under subdivision (b) of Section 835 for injury caused by a dangerous condition of its property if the public entity establishes that the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable. The reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury."

[6] *Black, supra,* uses the term "warning signs" (55 Cal.App.3d at p. 932) as descriptive of signs for lack of which the "trap" may be created under section 830.8.

signals, *of a type other than those described in section 830.4,* constitutes a concealed trap for those exercising due care, assuming the conditions of its liability under section 835 are otherwise met. (*Kessler* v. *State of California* (1988) 206 Cal.App.3d 317, 321-322 [253 Cal.Rptr. 537].)

In short, a dangerous condition proven to exist, for reasons other than or in addition to the mere failure to provide the controls or markings described in section 830.4, may constitute a proximate cause of injury without regard to whether such condition also constitutes a "trap," as described by section 830.8, to one using the public improvement with due care because of the failure to post signs different from those dealt with by section 830.4 warning of that dangerous condition. The City's argument to the contrary is rejected.

In this case, a dangerous condition of public property, existing for reasons other than or in addition to the City's "mere[ ]" failure to provide traffic controls or markings defined by section 830.4, subjected the City to liability. That liability was not contingent upon a finding such condition also created a "trap," defined by section 830.8, by reason of the City's failure to provide "warning signs" of a type not contemplated by section 830.4.[7]

Many of the cases, however, which discuss section 830.4 also discuss section 830.8 and the related "trap" exception without distinguishing between the two concepts. (See, for example, *Bakity* v. *County of Riverside* (1970) 12 Cal.App.3d 24, 31 [90 Cal.Rptr. 541]; *De La Rosa* v. *City of San Bernardino* (1971) 16 Cal.App.3d 739, 746 [94 Cal.Rptr. 175].) Indeed, in *Hilts* v. *County of Solano, supra,* the two sections were discussed together. (265 Cal.App.2d at pp. 173-174.) In arguing that it can only be subject to liability under section 830.4 if its failure to provide a traffic regulatory device resulted in a "trap," the City has mistakenly failed to focus upon the distinction between the two sections.

The City's reliance upon *Gardner* v. *City of San Jose* (1967) 248 Cal.App.2d 798 [57 Cal.Rptr. 176] does not change our conclusion. In *Gardner,* a pedestrian subway existed underneath the street; but the subway was not illuminated on the evening of the accident. Therefore, the plaintiff, a 15-year-old girl, walked across the street rather than using the subway and was struck by an automobile. The driver did not see the girl until the moment of impact. The defendant city had relied on the subway to protect pedestrians and, therefore, did not mark the crosswalk. The appellate court

---

[7]No contention was made below by respondents that the public street was in a dangerous condition because the City failed to provide the traffic or warning signals described in section 830.8.

held that the immunity of section 830.4 did not apply because the danger-ous condition was not created merely by the failure to provide traffic regula-tory devices. "Although section 830.4 . . . provides that a condition of public property is not a dangerous one *merely* because of the failure to provide regulatory traffic control signals, the absence of such signals for the protection of pedestrians must be taken into consideration, together with other factors. It is a logical inference, which the jury no doubt drew, that the condition of the intersection was allowed to remain as it was because of the existence of the subway. But the lack of crosswalk markings, better illumination and warning signs became important factors in the case when the subway itself was in a dangerous condition. Although the city need not have provided a subway, once it had done so it was bound to see to it that the condition of the subway would not become such that, in combination with other factors within the city's control, a dangerous condition would be created." (*Id.* at p. 803, italics in original.) The court went on to note that a more particular peril existed under the facts of *Gardner.* Because the sub-way was dangerous, pedestrians were entitled to use the surface road and rely on the ordinary rule of right-of-way. Conversely, drivers approaching the area would assume that the subway was in good condition, and that they had the right-of-way. Thus, both the driver and the pedestrian had been given the apparent right-of-way; the intersection constituted a "trap." (*Id.* at pp. 804-805.)

The City focuses on the "trap" language in *Gardner* in support of its theory, that it is immune from liability under section 830.4 merely because it failed to provide regulatory signals or markings at the accident intersec-tion. This focus ignores respondents' theory of the City's liability, which was that the dangerous condition of the intersection resulted not "merely" from such failure to install regulatory signals or markings at its intersection, but from other factors beyond that failure which obstructed the vision of motorists using it, i.e., the pillars in the middle of 13th Street and the shadow of the overhead freeway. The jury could, as *Gardner* indicates, consider the absence of such regulatory signals or makings "together with [such] other factors" (248 Cal.App.2d at p. 803) in determining whether the accident intersection represented a dangerous and defective condition of public property. Such jury consideration under these circumstances is not proscribed by section 830.4. "If a traffic intersection . . . is dangerous for *other* reasons, the mere fact that no provision was made for a traffic control signal or stop sign which could have eliminated the danger will not preclude liability." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.39, pp. 249-250, italics in original.) If an intersec-tion *is* dangerous because of the failure to provide warning or regulatory signs *and also* because of the "conjunction of other factors," section 830.4 is

no bar to liability. (*Hilts* v. *County of Solano, supra,* 265 Cal.App.2d at p. 174.)

The City next argues that the jury was improperly instructed on the extent of immunity provided by section 830.4. We disagree.

At the respondents' request, the jury was instructed as follows, "A public street or highway is not in a dangerous condition solely because the public entity did not provide regulatory traffic control signals. However, if a public street or highway is dangerous for other reasons, the fact that no provision was made for regulatory traffic control signals which could have eliminated the danger will not preclude liability." The City argues that this instruction was improper because "it leaves to the jury's imagination what other factors need to be present in order to establish liability despite the immunity in [section] 830.4 . . . ." The City asserts the court below "never instructed the jury that these other factors must constitute a trap before liability against the City could be found."

However, as we have noted above, evidence sufficient to establish a "trap" is not necessary in order to negate the immunity afforded by section 830.4. The City's argument is without merit.

Finally, the City claims that as a matter of law the intersection where the accident occurred was not dangerous. Relying on section 830.2, it argues that the evidence presented at trial did not present a question of fact to be decided by the jury. We disagree.

Section 830.2 provides, "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."

However, whether a given set of facts and circumstances creates a dangerous condition is usually a question of fact and may only be resolved as a question of law if reasonable minds can come to but one conclusion. (*Bakity* v. *County of Riverside, supra,* 12 Cal.App.3d at p. 30.)

Here, respondents' expert, David Schmidt, testified that the intersection where the accident occurred was dangerous. "[T]he posts are located between the two traffic lanes, and as one drives along approaching this

intersection you periodically have a view of the opposing traffic. . . . [T]here are at that same time areas which are in shadow or . . . there are areas that are outside of your viewing opportunity. In other words, if you have a couple of posts here, you can look between them, but you can't see behind them. And each of those posts has a shadow that goes from your viewing point, out, like a fan, and it grows as it moves beyond the post." We cannot say these factors were so trivial, minor, or insignificant that as a matter of law the intersection here was not dangerous, The court did not err in submitting the issue to the jury.

### III. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Benson, J., concurred.