[No. D015166. Fourth Dist., Div. One. Jan. 14, 1993.]

REGINA COMPTON, Plaintiff and Appellant, v.
CITY OF SANTEE, Defendant and Respondent.

592

COUNSEL

Garber, Sokoloff & Van Dyke and John M. Van Dyke for Plaintiff and Appellant.

Daley & Heft, Richard J. Schneider and Kathryn M. Megli for Defendant and Respondent.

OPINION

**FROEHLICH, J.**—Plaintiff Regina Compton (Compton) appeals from a judgment entered in favor of defendant City of Santee (City) after the granting of City's motion for summary judgment. City's motion urged, among other things, that City was immune from liability pursuant to Government Code[1] section 830.6. Compton contends the trial court erred in granting the motion, arguing a genuine issue of material fact existed as to whether the design immunity was lost based on City's "notice of changed circumstances."

I. *Factual and Procedural Background*

On August 20, 1988, Compton was involved in a traffic accident near the Magnolia Avenue Bridge in Santee, California. The Compton car was struck by a truck driven by defendant Eric Drummond as Compton attempted to negotiate a left-hand turn onto westbound Chubb Lane from northbound Magnolia Avenue. Witnesses estimated Drummond was traveling at a speed of approximately 70 miles per hour or more.

Chubb Lane is located to the south of the Magnolia Avenue Bridge. Compton's claim against City was based upon the contention that the Magnolia Avenue/Chubb Lane intersection constituted a dangerous condition of public property because of the placement of the Magnolia Avenue Bridge. Specifically, Compton contended the bridge's "cresting" and a

---

[1]All statutory references are to the Government Code unless otherwise specified.

horizontal curve created a sight restriction for which no adequate warning was provided.

City's motion for summary judgment raised three arguments. First, City argued the Magnolia Avenue Bridge was not a dangerous condition of public property as a matter of law. Second, City argued it had no notice of the allegedly dangerous condition of the Magnolia Avenue Bridge. Finally, City argued it was immune from liability pursuant to the provisions of section 830.6.[2]

The trial court granted the motion on the immunity ground, concluding City was protected by the design immunity provision of section 830.6.

## II. *Standard of Review*

The purposes and standards for summary judgment are well established. ■ The purpose of the summary procedure is to penetrate through adept pleading to ascertain, by means of affidavits, the presence or absence of triable issues of fact. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) The trial judge determines whether triable issues exist by examining the affidavits and evidence, including any reasonable inferences which may be drawn from the facts. (*People* v. *Rath Packing Co.* (1974) 44 Cal.App.3d 56, 61-64 [118 Cal.Rptr. 438].) ■ In examining the sufficiency of the affidavits, those of the moving party are strictly construed and those of the opposing party liberally construed. ■ Any doubts as to the propriety of granting the motion are resolved in favor of the party opposing the motion. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

■ When the motion for summary judgment is supported by affidavits or declarations sufficient to sustain the motion, however, the burden shifts to the party opposing the motion to show that triable issues of fact exist. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) ■ A party may not avoid summary judgment based on mere

---

[2]Section 830.6 provides in pertinent part:

"Neither a public entity nor a public employee is liable . . . for an injury caused by the . . . design of a construction of, or an improvement to, public property where such plan or design has been approved . . . if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor. Notwithstanding notice that constructed or improved public property may no longer be in conformity with a . . . design . . . which reasonably could be approved . . . the immunity . . . shall continue for a reasonable period of time . . . [to allow the entity to obtain funds and bring the property into conformity with a reasonable design]."

speculation and conjecture (*Pena* v. *W. H. Douthitt Steel & Supply Co.* (1986) 179 Cal.App.3d 924, 931 [225 Cal.Rptr. 76]), but instead must produce admissible evidence raising a triable issue of fact. (*Craig Corp.* v. *County of Los Angeles* (1975) 51 Cal.App.3d 909, 915 [124 Cal.Rptr. 621].)

■ On appeal from an order granting summary judgment, the appellate court examines the facts presented to the trial judge and independently determines their effect as a matter of law in light of the above principles. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

### III. *City Demonstrated That Design Immunity Vested*

Design immunity under section 830.6 is an affirmative defense to liability for a dangerous condition of public property. ■ If the public entity demonstrates it is entitled to design immunity, recovery may be denied regardless of the evidence presented relating to a defective design. (*Bane* v. *State of California* (1989) 208 Cal.App.3d 860, 866 [256 Cal.Rptr. 468].)

■ A public entity establishes design immunity as a defense by showing three elements: (1) the causal relationship between the design and the accident; (2) the discretionary approval of the design prior to construction; and (3) substantial evidence supporting the reasonableness of the design. (*Hefner* v. *County of Sacramento* (1988) 197 Cal.App.3d 1007, 1014 [243 Cal.Rptr. 291].)

■ On review, the question of whether "design immunity and each of its elements exist is an issue of law, i.e., the reviewing court must determine whether the [government entity] has met its burden of establishing as a matter of law all the elements of the defense of design immunity." (*Bane* v. *State of California, supra,* 208 Cal.App.3d at p. 867.)

Here, it is undisputed that a showing was made of the first two elements of the design immunity defense: causation and discretionary approval of the plan. ■ Compton contends, however, that triable issues of fact exist as to the third element: reasonableness of the design. This position is based upon Compton's expert's testimony that the "sight distances" were below recommended standards and created a "trap." Compton argues that this testimony raises an issue of fact as to whether the design was reasonable.

The problem with this argument is that it does not focus on the key determination to be made in a design immunity case. ■ The issue is

not whether the trial court or jury could find the design unreasonable based on conflicting evidence, but whether there is *any* reasonable basis on which a reasonable public official could initially have approved the design. Section 830.6 makes clear that immunity exists "if the trial or appellate court determines that there is *any substantial evidence* upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards there-for. . . ." (Italics added.)

Thus, as long as there was any substantial basis on which a government official could have decided the design was reasonable, it is irrelevant that a contrary opinion might have been offered. (*Baldwin* v. *State of California* (1972) 6 Cal.3d 424, 429-431 [99 Cal.Rptr. 145, 491 P.2d 1121] [design immunity demonstrated for purposes of summary judgment on showing a reasonable employee could have approved the design as reasonable].)[3]

 The trial court correctly concluded there was substantial evidence upon which a reasonable legislative body could have approved the design as reasonable. First, the design of the Magnolia Avenue Bridge was supervised by R. J. Massman, county engineer. This factor, alone, probably suffices to establish immunity. (*Ramirez* v. *City of Redondo Beach* (1987) 192 Cal.App.3d 515, 526 [237 Cal.Rptr. 505] [approval by competent professionals establishes reasonableness of approval].) Additionally, however, there was evidence the design met or exceeded the state and county standards in effect at the time it was approved and still met or exceeded the present sight line recommendations promulgated by California Department of Transportation and American Association of State Highway and Transportation Officials.

This showing demonstrates, at a minimum, that reasonable minds could differ over the reasonableness of the design, which factor suffices to create design immunity. (*Ramirez* v. *City of Redondo Beach, supra,* 192 Cal.App.3d 515.)

---

[3]The rationale behind governmental design immunity contained in section 830.6 is to prevent a jury from reweighing the same factors considered by the governmental entity which approved the design. To permit reexamination in tort litigation of particular discretionary decisions where reasonable people may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decisionmaking by those public officials in whom the function of making such decisions has been vested. (*Bane* v. *State of California, supra,* 208 Cal.App.3d at pp. 865-866.)

IV. *Design Immunity Remains Because There Is No Triable Issue of Fact as to Notice of Changed Circumstances*

 Design immunity under section 830.6 is not perpetual but may be lost as a result of changed circumstances which subsequently render the improvement dangerous, if the public entity has received actual or constructive notice thereof. (*Baldwin* v. *State of California, supra,* 6 Cal.3d at p. 431.) If the approved design becomes dangerous by reason of any change in conditions, and that fact is known to the public entity, the immunity will continue for only a reasonable period of time to allow the entity to obtain funds to carry out the remedial work of bringing the property back into conformity with a reasonable design or plan. (§ 830.6.) Thus, there are at least two predicates to loss of design immunity: changed conditions and notice. (*Ramirez* v. *City of Redondo Beach, supra,* 192 Cal.App.3d at p. 527.)

A. *No Triable Issue Regarding Changed Conditions*

 Compton made no factual showing of any change in conditions between the time the plan was approved and the time of the accident. To the contrary, the factual showing was limited to expert opinion that the design was defective in light of current conditions, without any suggestion that current conditions differed from the conditions prevailing when the plan was approved. From all appearances, the conditions at the time of the accident (such as physical topography, traffic volume, prevailing speeds, posted speed limits, etc.) were identical to the conditions extant or expected when the project was designed. Without evidence of some change, a design which was reasonably approvable at its inception remains reasonably approvable today.

We recognize that *Bane* v. *State of California, supra,* appears to hold that a change of circumstances need not always be shown (see 208 Cal.App.3d at p. 871). We view this position to be fundamentally inconsistent with the objective of section 830.6,[4] which provides for immunity if the plan *could have been* deemed reasonable when approved. The Legislature, by its 1979 amendments (see Stats. 1979, ch. 481, § 1, p. 1638), directed that immunity,

---

[4]We caution that *Bane*'s apparent discarding of the "changed circumstances" requirement is at best equivocal. First, *Bane* factually involved changed circumstances. Second, its own language suggests, at least implicitly, that some change must occur to forfeit the immunity, because it refers to a design which "for any reason *no longer* conforms to a design which the entity reasonably could approve" (see 208 Cal.App.3d at p. 875, italics added), suggesting something changed a reasonable design into an unreasonable one. Finally, *Bane* appears at bottom to be a case questioning whether immunity *ever* vested. It refers to the accident rate at the "as-designed" intersection and then declares that "[n]o traffic engineer reasonably could

once vested, is forfeited only if the public entity has received notice that the plan *"may no longer* be in conformity with a plan . . . which reasonably could be approved. . . ."* (§ 830.6, italics added.) The emphasized language at least implies that some change must have occurred, because a previously reasonable design does not become one which "may no longer" be reasonable unless something has changed in the interim. That is, if design immunity vested because the plan was one which "reasonably could be approved," it is forfeited only if it is "no longer" a reasonable plan, i.e., if the context within which its reasonableness is assessed has somehow changed.[5]

## B. *No Triable Issue Regarding Notice*

Even assuming that changed conditions either were not required or were sufficiently shown to create an issue of fact, we find nothing to suggest City had notice sufficient enough to overcome the immunity. Evidence showed that each year approximately 4,469,920 vehicles traveled southbound through the intersection, while approximately 136,649 vehicles traveled northbound and negotiated the left turn. Though somewhat ambiguous, the facts reveal there were between zero and four other accidents similar to Compton's accident at the intersection in the nearly five-year period preceding the accident.[6] To prove that this accident history put City on "notice" of the "dangerous condition," it was incumbent on Compton to show this rate was statistically aberrant, i.e., unusual or excessive in some respect. No such

---

call this a safe condition" (*id.* at p. 874, italics added), suggesting that *Bane* concluded the original design was not one which could reasonably have been approved.

[5]One scholar, struggling with the statutory language of the 1979 amendments to section 830.6, states that *Bane* "abolished any requirement under [*Baldwin* v. *State of California, supra*, 6 Cal.3d 424] that a plaintiff must show . . . changed physical conditions . . . ." (Fisher, *Design Immunity For Public Entities* (1991) 28 San Diego L.Rev. 241, 257.) Of course, a lower court cannot "abolish" Supreme Court rulings. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) *Bane* instead purported to interpret the 1979 amendments and concluded they were intended to eliminate the changed conditions aspect of *Baldwin*. However, the law review author himself points out that the amendment "[i]nterpreted literally . . . does not define the circumstances *under which the design immunity is lost*; rather, it specifies the circumstances *under which it may be retained.*" (Fisher, *supra*, 28 San Diego L.Rev. at p. 257, italics added.) We agree that this is the proper interpretation of the 1979 amendment.

[6]The record is ambiguous regarding the accident rate. City's expert averred there were no similar accidents from 1984 until Compton's accident, and that such accident was the only one of that nature through the date of the hearing. However, plaintiff's expert claimed that during a six-year period there were five accidents (presumably Compton's and four others) which "appear" to have been similar. City objected to plaintiff's "evidence" because the averments were made without a foundational showing, were speculative, and were also ambiguous (i.e., what was a "similar" accident). The trial court sustained these objections, it appears properly so. However, we will assume for purposes of this appeal that the plaintiff's expert testimony (i.e., of five accidents in six years) was admitted.

evidence appears in this record. Nowhere does plaintiff produce evidence that one accident per year in an intersection carrying 4.5 million vehicles per year is sufficiently beyond ordinary statistical probabilities to alert City of the dangerous nature of the intersection.

### C. *The Provisions of Section 830.8 Are Irrelevant*

Compton seeks to identify an issue of fact by claiming City is liable because a public entity, although immune where a condition is dangerous for the mere failure to provide warning signs (§ 830.4), is not immune where the condition is dangerous for reasons other than failure to warn of the dangerous condition. (§ 830.8.) Compton argues that because the sight restrictions created a "trap," the City is not immune under section 830.8. (See *Washington* v. *City and County of San Francisco* (1990) 219 Cal.App.3d 1531 [269 Cal.Rptr. 58].)

While section 830.8 states that immunity for failure to provide warning signs does not apply where there is a dangerous hidden condition, it in no way purports to create an exception to design immunity under section 830.6. It would be illogical to hold that a public entity immune from liability because the design was deemed reasonably adoptable, could then be held liable for failing to warn that the design was dangerous. (See *Moritz* v. *City of Santa Clara* (1970) 8 Cal.App.3d 573, 575-577 [87 Cal.Rptr. 675] [no § 830.8 warning need be given where design, having met all applicable engineering standards, qualified for design immunity].) Even *Washington* v. *City and County of San Francisco, supra,* upon which Compton exclusively relies, recognizes that section 830.8 creates its own limited immunity (i.e., immunity for failure to provide warning signs), and that the "hidden trap" rule is an exception to section 830.8 immunity. (219 Cal.App.3d at pp. 1536-1537.)

Moreover, even assuming Compton's invocation of section 830.8 was somehow applicable, another obstacle is present. The entity loses its section 830.8 immunity only if the other conditions for liability under section 835 exist. (*Washington* v. *City and County of San Francisco, supra,* 219 Cal.App.3d at p. 1537.) One of the conditions of section 835 is the public entity's having had "notice" of the dangerous condition. (§ 835, subd. (b).) As we have noted above, it was not shown that City had notice (see pt. 4.B., *ante*) and hence section 830.8 would not apply.

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Huffman, J., concurred.