Filed 3/29/22  Cooper v. County of San Diego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TRAMAINE COOPER, | D077872 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2018-00026166-CU-PA-CTL) |
| COUNTY OF SAN DIEGO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed.

The Feldman Law Group and Gregory S. Cilli, for Plaintiff and Appellant.

Lonnie J. Eldridge, County Counsel, Christopher Welsh, Jeffrey P. Michalowski, and Juan Fernando Kish, Deputy Counsel for Defendant and Respondent.

Following a collision along Dehesa Road, plaintiff Tramaine Cooper sued the County of San Diego (the County), alleging it had created a dangerous condition via placement of a "Welcome to Dehesa" sign and by allowing left-hand turns across the road.  Cooper also alleged the County

negligently failed to warn drivers of a concealed dangerous condition caused by a reduction in the sight distance resulting from the sign's placement. In a motion for summary judgment or summary adjudication, the County claimed there was no dangerous condition, it lacked notice of any dangerous condition, and it had immunity from liability pursuant to Government Code[1] section 830.6, design immunity. The court agreed the County had design immunity and granted the motion for summary judgment.

Cooper appeals, contending the court erred by finding design immunity barred liability. Cooper contends the welcome sign does not justify design immunity because its location was not approved before its initial placement around 1999. He also contends an exception to immunity from liability for failing to post signs (§ 830.8) applies because the sign created a concealed, dangerous condition and failure to warn of that "hidden trap" takes precedence over design immunity.

We conclude the court properly applied design immunity based on the 2012 project improvement plan that considered the placement of the sign. We further conclude that under the facts of this case, design immunity precludes the failure-to-warn claim, and even if it did not, because there was no dispute that the County lacked notice of the allegedly concealed dangerous condition, the decision to grant summary judgment was proper.

I

BACKGROUND AND PROCEDURAL FACTS

Midday on May 26, 2017, Wayne Koren was driving a flatbed truck heading westbound on Dehesa Ranch Road. At the same time, Cooper was riding his motorcycle eastbound along the same road. Koren made a left turn onto a private driveway in front of Cooper, and the two collided. Cooper

---

[1]     Further statutory references are to the Government Code.

suffered injuries as a result. Koren told an officer at the scene that Cooper came around the curve when the front end of the truck was about three feet from the white line that marked the edge of Dehesa Road, off of which he was turning. Koren clarified at his deposition that he saw the motorcycle at the bottom of the curve. He also testified at the deposition that he saw Cooper before he began his left turn but believed he had sufficient time to make the turn safely.

Following the accident, Cooper filed suit against the County,[2] alleging a cause of action for dangerous condition of public property in violation of section 810. Cooper contended that the County's placement of a "Welcome to Dehesa" sign on the westbound stretch of the road where Koren was traveling blocked drivers' views of oncoming traffic and should not have been placed where it was. He also believed left-hand turns at the location created a dangerous condition, and the eastbound lane he was driving in lacked adequate warning signs to avoid collisions.

The County moved for summary judgment and summary adjudication, contending the road was not a dangerous condition, the County did not have advanced notice of the alleged dangerous condition as required by section 835, subdivision (b), and the action was barred by design immunity. It explained that although the "Welcome to Dehesa" sign was initially installed before 1999, in 2012 the County's Department of Public Works assigned a civil engineer and licensed traffic engineer to evaluate the safety of Dehesa Road and determine what, if any, safety enhancements the County should make.

---

[2]    Cooper also sued Koren and Koren's employer, alleging negligence and negligence per se. Those claims are not at issue in this appeal.

Giselle Finley, the assigned engineer, traveled the road and considered sight distance limitations, obstructions, and whether the County should add signs. She also reviewed the road's accident history. There had been no accidents on the road during the five years preceding the accident. Finley considered and rejected "additional striping or modified striping, adding curve advisory speed signs, adding or changing speed limit signs; adding signs displaying curve warning symbols; the potential need for repositioning of roadside signs, including the 'Welcome to Dehesa' sign; and the potential need to enhance sight distance." She determined that the only improvement necessary to address safety issues was the addition of a centerline rumble strip.

Finley prepared a formal set of plans to add a centerline rumble strip, which was incorporated into a larger paving project that was reviewed and approved by the Department of Public Works and ultimately ordered by the San Diego Board of Supervisors. The centerline rumble strip was installed before the collision, in compliance with the plans.

The County also provided a declaration from Karen Shaffer, a civil engineer and registered traffic engineer employed by the Department of Public Works. She estimated that each day 1,550 vehicles drive the stretch of Dehesa Road near the collision, and there had been no reported similar collisions in that area between January 1, 2012 and May 26, 2017. She also stated that the County records showed no reports or complaints about the area near the collision. She specified the County received no complaints about the welcome sign, the road striping, the need for additional signs regarding speed or the curve, the need to prohibit turns, sight distance between opposing drivers along the roadway, or any unusual dangers involving left-hand turns.

4

Cooper opposed the summary judgment motion, arguing the County's placement of the "Welcome to Dehesa" sign created a dangerous condition by blocking the truck driver's view, that the condition was created by the County, and that design immunity was inapplicable because there was no evidence the sign had been approved before its initial installation. Cooper also argued design immunity did not bar the failure-to-warn claim. Cooper supplied an expert report opining that the placement of the "Welcome to Dehesa" sign reduced Cooper's stopping sight distance and created a dangerous condition, and that the County failed to provide a reduced speed warning eastbound to account for the sight distance.

Cooper also filed a first set of evidentiary objections, which the court rejected. The court did not rule on other evidentiary objections, determining they were not material to its ruling. The court tentatively denied the county's motion, but following a hearing, the trial court granted the motion on the ground that design immunity barred Cooper's claims. The court entered judgment in favor of the County, and Cooper timely appealed.

## II

## DISCUSSION

### A. Standard of Review

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) The moving party bears the burden of proving there is no triable issue of material fact and so it is entitled to judgment as a matter of law. (*Id.* at p. 850.) "There is a triable issue of material fact if, and only if, the

5

evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*)

A defendant must show either that at least one element of the cause of action cannot be established or provide a complete defense to the cause of action. (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289-290.) If the defendant carries this burden of production, there is a shift, and the opposing party must "make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

"We review the record and the determination of the trial court de novo." (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003.) We "view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

### B. Principles of Law Governing Design Immunity

Government Code section 835 states that "[e]xcept as provided by statute," a public entity is liable for injury caused by a dangerous condition of its property if the property was in a dangerous condition at the time of the injury; the dangerous condition proximately caused the condition; the dangerous condition created a foreseeable risk of the kind of injury the plaintiff suffered; and either an employee created the condition within the scope of employment or the public entity had actual or constructive notice of the condition and a sufficient period of time before the plaintiff's injury to protect against the condition. (§ 835, subds. (a) & (b).)

6

Section 830, subdivision (a), defines a dangerous condition as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." Typically, a jury determines whether there is a dangerous condition. (See *Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 569-570.)

The Government Code also sets forth several exceptions to public entity liability. One exception is design immunity, found in section 830.6. A public entity is not liable for an injury that is caused by the plan or design of construction or an improvement when that plan is approved in advance by an entity with authority to approve it and there is substantial evidence to demonstrate a reasonable public employee could have adopted the plan or approved the plan. (§ 830.6.) To demonstrate design immunity, the public entity must demonstrate "(1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 69 (*Cornette*).)

Even after design immunity attaches to a project, a public entity can lose its statutory immunity from liability under section 830.6 if its "actual operation under changed physical conditions produces a dangerous condition of public property and causes injury. . . ." (*Baldwin v. State of California* (1972) 6 Cal.3d 424, 438 (*Baldwin*).)

## C. Design Approval

There is no dispute before us about the first and third elements of design immunity; the parties appear to agree that there is a causal

relationship between the plan or design and the accident, and Cooper does not directly attack the County's claim that there is substantial evidence supporting the reasonableness of the design.[3] Cooper focuses on the second element, contending design immunity does not apply because the County failed to get discretionary approval of the placement of the "Welcome to Dehesa" sign before it was initially installed around 1999. Cooper maintains that Finley's consideration of the placement of that sign in 2012 is an improper, after-the-fact approval not permitted by the code.

Although the County did not *add* the sign after Finley conducted her safety review, the placement and propriety of the sign were considered as part of an improvement to the space; thus, it falls within the immunity offered by section 830.6. Finley's declaration explains the County tasked her with evaluating Dehesa Road to determine whether safety enhancement should be made. As part of her process, she considered a series of design possibilities: additional striping or modified striping, adding curve advisory speed signs; adding speed limit signs; adding signs displaying curve warning symbols; potential sight distance limitations and obstructions; the accident history along the road; and the positioning of existing roadside signs. In her judgment, a centerline rumble strip would enhance the safety of the road, and she considered the most appropriate location to be along Dehesa Road. She expressly considered and rejected repositioning the "Welcome to Dehesa" sign. Then, she completed written plans on behalf of the Department of

---

[3]    Cooper's opening brief argues the County "failed to provide evidence needed to support the second element that a design or plan was approved before the placement of the 'Welcome to Dehesa' sign."

8

Public Works and stamped them with her registered professional engineer stamp. These plans were approved before the County undertook the rumble strip project, a project which was completed before May 2016.

The statute permits design immunity for "an injury caused by the plan or design of a construction of, *or an improvement to*, public property" when that plan or design is approved in advance. (§ 830.6, emphasis added.) Cooper argues in his reply brief that the rumble strip project cannot be considered an improvement to public property because section 830.6 requires an "actual, physical change or addition to public real property" and there was no physical change to the welcome sign. Even accepting the definitional limitations of "improvement" Cooper claims in his reply brief, we disagree with the narrow brush with which he paints the scope of the improvement at issue here. While it is true that the welcome sign was not constructed or physically changed in some way, the improvement project actually caused a physical change to Dehesa Road because of the addition of the rumble strip.

Further, the immunity applies to the consequences of the "plan or design," and that can include intentional omissions. For example, in *Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, 1159-1161 (*Sutton*), the court explained that design decisions can include decisions to omit features. There, the record demonstrated that during a project to replace the roadway of the Golden Gate Bridge, which was deteriorating, in 1979 the city hired a traffic and transportation engineer who conducted a safety study to determine whether to install a median barrier. The engineer recommended continuing the then-current operations, and the board of directors subsequently authorized a project that did not include construction of a median barrier. Years later, the

9

district considered whether it should add moveable median barriers and again concluded the omission of the barriers was reasonable. The court of appeal explained that because there had been a design decision to exclude any median barrier, design immunity protected the public entity from liability.

Here, the County approved a plan for an improvement to public property by approving the rumble strip project. The placement of the "Welcome to Dehesa" sign was considered as part of that improvement project; thus, the County's approval of those plans includes the placement of the sign. Like the design decision not to add a median barrier in *Sutton,* here, the design decision was to leave the welcome sign in place.

Cooper asks us to treat the approval of these plans for the rumble strip separately from the original placement of the "Welcome to the Dehesa" sign.[4] However, Finley's declaration makes clear that the existence and placement of that sign were part of the overall design and plan for the portion of Dehesa Road that was being improved in 2012, and Cooper does not introduce any evidence to refute those claims or to challenge her discretion to make such a determination as the engineer assigned to evaluate the safety of that stretch

_____

[4]     The County does not address whether there was any approval before the initial installation of the sign.

of Dehesa Road.[5]  Because the sign's placement was considered before the rumble strip improvement project was undertaken, it meets the requirements of section 830.6, and design immunity applies.

### D.  Failure to Warn

Cooper next contends the placement of the "Welcome to Dehesa" sign obstructs westbound drivers' views of oncoming traffic and creates a "hidden trap" for drivers heading east along that stretch of road, creating liability for the County.  He argues the County should have posted a sign along the eastbound portion of the road warning of the curve and further contends that permitting left turns across Dehesa Road contributed to a concealed dangerous condition.  He maintains the court erred in granting the motion for summary judgment because these causes of injury were separate, intervening causes for which the County is liable notwithstanding design immunity.[6]

### 1.  Application of Section 830.8

Cooper relies on section 830.8, which provides immunity to public entities for injuries caused by failing to provide signs warning of a dangerous condition.  The exception to the immunity offered by section 830.8 is the "concealed trap" or "hidden trap" exception.  (*Chowdhury v. City of Los*

---

[5]      Cooper comments in his reply brief that there is no evidence that the Department of Public Works or the Board of Supervisors considered removing the welcome sign.  However, section 830.6 permits advance approval by an "employee exercising discretionary authority," and there is no real argument that Finley was not acting within the scope of her discretionary authority when she designed the improvement to exclude changes to the welcome sign's placement.  (See, e.g., *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1263 [evidence that engineer employed by public entity "reviewed and approved" construction plans established discretionary approval element as matter of law].)

[6]      Cooper does not argue the County lacks substantial evidence to support the reasonableness of its design.

11

*Angeles* (1995) 38 Cal.App.4th 1187, 1196-1197 ["concealed trap"]; *Compton v. City of Santee* (1993) 12 Cal.App.4th 591, 600 (*Compton*) ["hidden trap"];*Washington v. City and County of San Francisco* (1990) 219 Cal.App.3d 1531, 1536-1537 ["concealed trap"].) This exception allows a public entity to be liable from injury proximately caused by failure to provide a warning sign if the sign was necessary to warn of a dangerous condition, which would not be reasonably apparent to, and would not be anticipated by, a person exercising due care. (*Cameron v. State of California* (1972) 7 Cal.3d 318, 327 (*Cameron*); *Chowdhury,* at pp. 1196-1197.) Cooper maintains that this section of the statute should supersede any design immunity available via section 830.6. Our review of case law and the facts here leads us to a different conclusion.

In *Flournoy v. State of California* (1969) 275 Cal.App.2d 806 (*Flournoy*), the appellate court considered and rejected a design immunity claim but explained there can be separate liability for independent, passive negligence. There, plaintiffs alleged the state was negligent for failing to post warning signs or recommending a reduction in speed regarding the icy conditions of a roadway leading to a bridge. (*Id.* at p. 808.) The state claimed it was protected by design immunity because the freezing of the surface of the street leading to the bridge was inherent. (*Id.* at p. 810.)

The Court of Appeal noted that concurring, proximate causes can be set in motion by a single defendant and concluded that "[r]egardless of the availability of the active negligence theory, plaintiffs were entitled to go before a jury on the passive negligence theory, i.e., an accident caused by the state's failure to warn the public against icy danger known to it but not apparent to a reasonably careful highway user [citations]." (*Flournoy, supra,* 275 Cal.App.2d at p. 811.) It commented that the design immunity offered by

12

section 830.6 "does not immunize from liability caused by negligence independent of design, even though the independent negligence is only a concurring proximate cause of the accident.[ ]" (*Flournoy*, at p. 811, fn. omitted.) The court concluded the state failed to demonstrate the design *caused* the accident because ice on the road was not a specific design feature. (*Id.* at p. 812.) And because the plan or design was not the original cause of the accident, design immunity was not available as a defense. (*Id.* at p. 813.)

Moreover, because the requested warning signs regarding the icy road leading to the bridge was not one of design, there was "no problem of categorizing a warning sign as a diminution of a hazard created by the original design." (*Flournoy*, *supra*, 275 Cal.App.2d at p. 814.) In other words, the placement of the bridge may have created a dangerous condition, but the icy road was a separate, dangerous condition for which a warning may have been necessary. Thus, the court recognized that "[t]he conditions of the project in actual use after completion may generate intervening causative forces," and those intervening forces "do[ ] not relieve [the entity] from liability if those forces were foreseeable." (*Id.* at p. 813.)

Three years after *Flournoy,* the Supreme Court addressed design immunity in *Cameron*, *supra*, 7 Cal.3d 318. There, the victims were injured when their vehicle left the roadway after the driver lost control along a portion of the road with a steep downgrade and a sharp S curve. (*Id.* at p. 321.) The plaintiffs argued the curve with an uneven elevation was a dangerous condition that would trap the driver, who would think the road continued to the left when it continued to the right. (*Id.* at p. 323.) There were no speed signs or warning signs regarding the curve. (*Ibid.*) The state argued it was immune from liability under section 830.6 because the roadway was part of an approved plan. (*Cameron*, at p. 322.) The plaintiffs contended

13

that the degree of elevation was not part of the plan, so design immunity did not apply. (*Ibid.*) They also argued there was concurrent negligence from failing to warn about the dangerous condition of the superelevation, giving rise to an independent basis for recovery under section 830.8. (*Cameron*, at p. 322.)

The Supreme Court concluded that on the record before it, because the design plans did not specify the superelevation of the roadway, the state was not eligible for design immunity under section 830.6. (*Cameron, supra*, 7 Cal.3d at pp. 325-326.) "For the guidance of the trial court upon remand," the Supreme Court also separately considered whether there was a viable action for failure to provide warning signs. (*Id.* at pp. 326-327.) It recognized that section 830.8 provides an exception to immunity for failure to provide such signs when a sign is necessary to warn of a dangerous condition that would not be reasonably apparent to a person using due care. (*Cameron*, at p. 327.) The court explained that " 'the design immunity of section 830.6 is limited to a design-caused accident. [Citation.] It does not immunize from liability caused by negligence independent of design, even though the independent negligence is only a concurring, proximate cause of the accident.' " (*Id.* at p. 328.) Because the passive negligence of failing to warn of a dangerous condition was independent of the design, the plaintiffs could properly bring that theory to the jury: "[I]f there had been proper warning of a dangerous curve and posting of the safe speed, the dangerous condition of the highway would have been effectually neutralized. The state's failure to so warn was an independent, separate concurring cause of the accident." (*Id.* at pp. 328-329.) However, the holding in *Cameron* did not address whether design immunity would protect a public entity when the decision not to include warning signs is part of the design or plan itself. Nor do we read it as

14

holding that the plaintiff had an independent basis of liability under the hidden trap exception on remand in the event design immunity applied to the superelevation.

Several subsequent cases have considered more directly the question of whether section 830.8 precludes application of the design immunity provided in section 830.6, by considering whether section 830.8 allows for liability on the failure to warn of a hidden trap when the trap is part of a dangerous condition subject to design immunity.

In *Compton*, a panel of this court affirmed a trial court's grant of summary judgment. There, the plaintiff was struck while negotiating a left-hand turn in front of another driver. (*Compton*, *supra*, 12 Cal.App.4th at p. 594.) The plaintiff alleged the intersection constituted a dangerous condition of public property because "the bridge's 'cresting' and a horizontal curve created a sight restriction for which no adequate warning was provided." (*Id.* at pp. 594-595.)

Among other things, the plaintiff argued the city was liable despite design immunity because the sight restrictions created a dangerous hidden condition, and so section 830.8 controlled. (*Compton*, *supra*, 12 Cal.App.4th at p. 600.) We disagreed: "While section 830.8 states that immunity for failure to provide warning signs does not apply where there is a dangerous hidden condition, it in no way purports to create an exception to the design immunity under section 830.6. It would be illogical to hold that a public entity immune from liability because the design was deemed reasonably adoptable, could then be held liable for failing to warn that the design was dangerous. [Citation.]" (*Id.* at p. 600.)

Similarly, in *Weinstein v. California Department of Transportation* (2006) 139 Cal.App.4th 52, the Sixth Appellate District Court of Appeal

concluded a public entity could not be liable under section 830.8 for an injury caused by the failure to provide warning signs when the public entity was immune from liability for that condition under section 830.6. The court recognized that there was design immunity for each of the features that the plaintiff had identified as dangerous. And, "[s]ince defendant could not be held liable for these aspects of the roadway's design as dangerous conditions, it could not be held liable for failing to warn of these same aspects." (*Weinstein*, at p. 61.) That court distinguished itself from *Cameron,* noting that "*Cameron* involved the failure to warn of a hidden dangerous condition that was not part of the approved design of the highway," whereas "[h]ere, plaintiffs claim that defendant was obligated to warn of conditions that *were* part of the approved design." (*Ibid.*)

Most recently, this question was considered in *Tansavatdi v. City of Rancho Palos Verdes* (2021) 60 Cal.App.5th 423, review granted April 21, 2021, S267453 (*Tansavatdi*). There, a bicyclist traveling along a stretch of road without a dedicated bike lane planned to ride straight through an intersection from the far right side of the lane when a truck turning right at the intersection struck the biker. (*Id.* at p. 428.) The city asserted that design immunity shielded its decision to exclude a bike lane at that location. (*Id.* at pp. 431-432.) The plaintiff argued the city had liability under a separate failure to warn theory, unrelated to the design. (*Ibid.*)

The court reasoned that *Cameron* does not "as a matter of law, necessarily preclude [a public entity's] liability under a theory of failure to warn" even if the failure is to warn of "the same dangerous condition" for which there is design immunity, so it remanded the matter for reconsideration of the failure to warn theory. (*Tansavatdi*, *supra*, 60 Cal.App.5th at p. 442, review granted.) Thus, *Tansavatdi* concluded that if a

16

design creates a dangerous condition, the public entity is protected against liability for creating the condition, but it is not protected from liability for failing to warn of that same condition.

*Tansavatdi* stated that it was relying on *Cameron* as holding or suggesting that section 830.8 provides a plaintiff with an independent basis for a failure to warn claim. (*Tansavatdi, supra*, 60 Cal.App.5th at pp. 441-442, review granted.) As we previously explained, we do not understand *Cameron* as holding that the plaintiff had an independent basis of liability under the hidden trap exception if, on remand, design immunity ultimately applied to the superelevation of the curve. Accordingly, we decline to follow *Tansavatdi*'s approach.

We also are not persuaded by Cooper's argument that sections 830.6 and 830.8 conflict, and because section 830.8 is more narrowly drawn it must take precedence. Section 830.8 specifies "nothing in this section exonerates" a public entity for failing to warn of hidden traps. The provision for design immunity is not in section 830.8; it is provided for in section 830.6. Thus, the two statutory sections are not in conflict.

Design immunity exists " 'to prevent a jury from simply reweighing the same factors considered by the governmental entity which approved the design.' [Citation.]" (*Cameron, supra*, 7 Cal.3d at p. 326.) " ' "[To] permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested." ' [Citation]." (*Ibid.*) We cannot separate the failure-to-warn claim from the design immunity claim in this case because

17

the undisputed evidence indicates the decision not to warn was considered as part of the design.

As we detailed *ante*, the County's decision to leave the "Welcome to Dehesa" sign and to permit left-hand turns westbound across Dehesa Road onto private driveways was considered as part of the rumble strip improvement project and was thus part of the design. Although Cooper maintains that there remains a dispute over whether the welcome sign affected the truck driver's line of sight, this cannot be the basis for the failure-to-warn claim because that allegedly dangerous condition is part of the design itself. Because there is no evidence contradicting the County's assertion that it expressly planned the area without any warning signs, the absence of such signs cannot be the basis of a cause of action here.[7] As we explained in *Compton*, "[i]t would be illogical to hold that a public entity immune from liability because the design was deemed reasonably adoptable, could then be held liable for failing to warn that the design was dangerous. [Citation.]" (*Compton*, *supra*, 12 Cal.App.4th at p. 600.) Thus, Cooper's claim for liability based on these causes of injury are barred by design immunity.

---

[7] We note that while design immunity does not continue in perpetuity (*Cornette*, *supra*, 26 Cal.4th at p. 66 [describing the elements to demonstrate loss of design immunity from changed conditions]; *Baldwin*, 6 Cal.3d at p. 431 [discussing loss of design immunity outlined in section 830.6 from change in circumstances]), Cooper did not argue that the County lost immunity at some point after the rumble strip project was completed. Nor is there any evidence in the record that indicates a change in conditions after the rumble project in 2012.

## 2. Notice Requirements

Finally, even assuming there were a dangerous condition in this case, because there is no dispute that the County lacked actual or constructive knowledge, we would affirm the grant of summary judgment on that basis.

Where there is a dangerous condition and there is no immunity, section 835 requires proof that either an employee negligently or wrongfully created the dangerous condition within the scope of employment (subdivision (a)) or that the public entity had actual or constructive notice of the allegedly dangerous condition (subdivision (b)). Cooper argues notice was not a necessary element because the County created the dangerous condition, thereby meeting the requirements of section 835, subdivision (a). However, because we have concluded the County was shielded from liability under section 835, subdivision (a) because of design immunity, even if a failure-to-warn claim were viable, Cooper would need to demonstrate notice under section 835, subdivision (b).

In its motion for summary judgment, the County argued it did not have actual or constructive notice of a dangerous condition. The County produced evidence that an estimated 1,550 vehicles pass along the stretch of Dehesa Road at issue in this case each day, and there had been no reported similar collisions along the location of the collision between January 1, 2012 and May 26, 2017. There also had been no reports or complaints about the stretch of road, including no complaints about the welcome sign, the road striping, the need for additional signs regarding speed or the curve, the need to prohibit turns, sign distance between opposing drivers along the roadway, or any unusual dangers involving left-hand turns. Cooper did not provide evidence contradicting this claim or provide evidence to create a dispute of this fact.

19

DISPOSITION

The judgment is affirmed.  Parties to bear their own costs.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.