GEORGE, C. J.
I respectfully dissent.
In my view, when a developer, as a condition of obtaining a development permit, agrees to install a safety measure for the protection of the public and proceeds to develop the property under the auspices of the permit, the developer owes a legal duty of due care to the members of the public for whose protection the safety measure is intended, and may be held liable if its negligent failure to comply with its obligation under the permit condition is a proximate cause of an injury to a person within the protected class. *563 Contrary to the conclusion reached by the majority, I believe the general principles embodied in section 324A of the Restatement Second of Torts (section 324A) support the imposition of liability upon a developer under these circumstances.
I
As the majority recognizes, under section 324A a person “who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person . . . , is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if [¶] (a) his failure to exercise reasonable care increases the risk of such harm, or [¶] (b) he has undertaken to perform a duty owed by the other to the third person, or [¶] (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.”
The majority appears to acknowledge that a developer that agrees to install a traffic signal at an intersection as a condition of obtaining a development permit satisfies the initial requirements of section 324A: by undertaking to install a traffic signal, the developer should recognize that the signal is intended for the protection of third persons, i.e., the members of the public who use the intersection and are subjected to the risks that the traffic signal is intended to alleviate. The majority concludes, however, that none of the three additional alternative conditions or circumstances set forth in the concluding portion of section 324A is satisfied in this case—i.e., the majority concludes that (1) the developer’s alleged negligent delay in installing the signal did not increase the risk of harm posed by the intersection, (2) the developer, in agreeing to install the signal, did not undertake to perform a duty owed by the city to the plaintiff, and (3) there was no reliance upon the developer’s undertaking. As I shall explain, I conclude that two of the three alternative conditions set forth in section 324A support a determination that the developer owed a duty of care to plaintiff.
A
To begin with, unlike the majority I believe that the developer, in agreeing to install a traffic signal at the intersection of Foothill Boulevard and Osborne Street, reasonably could be found to have undertaken to perform a duty that the city owed to the users of the intersection to alleviate a dangerous condition at the intersection, thus supporting liability of the developer under the second condition set forth in 324A.
Under Government Code section 835, subdivision (b), a public entity may be held liable for an injury caused by a “dangerous condition” of its property *564 if the public entity “had actual or constructive notice of the dangerous condition ... a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.” As the majority notes, however, Government Code section 830.4 provides that “[a] condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals” (italics added), and thus it follows that the city’s liability under section 835 may not be posited solely upon the city’s failure to provide a traffic control signal. (See, e.g., Mittenhuber v. City of Redondo Beach (1983) 142 Cal.App.3d 1, 6 [190 Cal.Rptr. 694]; see generally 2 Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 1999) § 12.75, pp. 801-804.)
Nonetheless, as the court explained in Washington v. City & County of San Francisco (1990) 219 Cal.App.3d 1531, 1534-1535 [269 Cal.Rptr. 58], “[c]ases interpreting [Government Code section 830.4] have held that it provides a shield against liability only in those situations where the alleged dangerous condition exists solely as a result of the public entity’s failure to provide a regulatory traffic device or street marking. If a traffic intersection is dangerous for reasons other than the failure to provide regulatory signals or street markings, the statute provides no immunity.” (First italics in original, second italics added; see also Hilts v. County of Solano (1968) 265 Cal.App.2d 161, 174 [71 Cal.Rptr. 275]; see generally 2 Cal. Government Tort Liability Practice, supra, § 12.75, p. 802.)
On the basis of the record before us, a trier of fact reasonably could find that the intersection at Foothill Boulevard and Osborne Street constituted a dangerous condition not merely because of the absence of a traffic signal but because of the configuration and restricted sight lines of the intersecting streets, the permissible speed limit on Foothill Boulevard, and the increase in traffic on Foothill Boulevard over time, and because the city was aware of a number of serious accidents and near-misses that had occurred at the intersection in the years preceding the accident here in question. If the trier of fact so found, the city would have a legal duty to alleviate the dangerous condition at the intersection, and the developer, in agreeing to install a traffic signal at the intersection, would have undertaken one permissible means of satisfying the city’s legal duty to eliminate the dangerous condition. Under such circumstances, the developer would be subject to liability because it undertook to perform a duty owed by the city to the users of the intersection. (See Schmeck v. City of Shawnee (1982) 232 Kan. 11 [651 P.2d 585, 596-599] [affirming judgment against company hired to install traffic signal, relying in part upon § 324A in rejecting claim that company owed no duty to members of the public who used the intersection].)
*565 B
Second, whether or not a duty on the part of the developer may be based upon the second condition of section 324A, I believe the developer owed a duty to the users of the intersection under the third condition of section 324A, because in these circumstances the city (and the neighborhood residents who repeatedly had lobbied the city for the installation of a traffic signal at the intersection) reasonably relied upon the developer’s undertaking to install the traffic signal.[1]
As the opinion recounts, in this case local and state transportation authorities concluded in December 1988, more than two years prior to the date of plaintiff’s accident, that in view of the conditions of the intersection and increasing traffic use, as well as the numerous accidents that had occurred at the location, a traffic signal should be installed at the intersection in question, triggering the developer’s obligation under the permit to install the signal. The record also discloses that the decisions by the transportation authorities came after local residents had lodged many complaints about the dangerousness of the intersection and had engaged in extensive lobbying for such a traffic signal. Because the developer in this case agreed to install the traffic signal as a condition of its development permit and proceeded to develop the property and to hire contractors to install the traffic signal, it is reasonable to conclude that both the city and the public relied upon the developer’s undertaking and, because of such reliance, did not seek to have either the city itself or some other developer install the needed traffic signal. Indeed, a declaration filed by a board member of the local homeowners association states that she personally informed the developer of the homeowners’ concern over the dangerous intersection and of the need to have the traffic signal in place and operational as soon as possible. A number of articles in a neighborhood newsletter, which also are included in the record, confirm that the residents of the neighborhood very clearly relied upon the developer to install the traffic signal. Further, the contractor in charge of the traffic signal project acknowledged in his deposition that he was aware that there was pressure from the local homeowners to complete the installation.
Although the development permit did not set a specific deadline for the installation of the signal, it is well established, under generally applicable *566 legal principles, that in the absence of the recitation of a specified date, a provision is to be interpreted to require performance within a reasonable period of time. (See, e.g., Civ. Code, § 1657.) In this case, more than two years elapsed between the date the developer'was informed that a traffic signal was required and the date of plaintiff’s accident. Under these circumstances, a trier of fact reasonably could determine that the more than two-year delay in the installation of the signal exceeded a reasonable period of time, and that the accident was caused, at least in part, by the developer’s failure to comply with the permit condition.
The majority asserts that “the City was not relying on defendants to complete the traffic signal installation within any particular time” (maj. opn., ante, at p. 561), suggesting that the developer could have delayed the installation of the traffic signal indefinitely without incurring any liability for the dangerous condition that would have persisted throughout such delay. Once a developer has made a commitment to install a needed safety measure as a condition of obtaining a development permit and goes ahead with work under the permit, however, the local entity and the public reasonably anticipate that the safety measure in question will be provided by the developer within a reasonable period of time. Thus, under these circumstances the public entity would have no reason to expend its own funds or to seek to impose a similar requirement upon some other entity, absent some indication from the developer that it does not intend to fulfill its responsibility under the permit. For this reason, when a developer agrees to provide a safety measure as a condition of obtaining a permit and proceeds to develop the property under the permit, I believe that, under the principles embodied in section 324A, the developer may be held liable if, as a result of its negligence, it fails to provide the safety measure in a timely manner, and such failure is a proximate cause of an injury to a member of the public for whose protection the safety measure was intended.
Further, if the developer owed a legal duty to plaintiff to use due care to provide the safety measure it had agreed to install (as I have concluded, for the reasons just discussed), it also follows, under section 324A, that the contractor hired by the developer specifically to design and install the safety measure also may be held liable if its negligence in failing to perform its obligations under the contract in a timely manner was a proximate cause of plaintiff’s injuries.
II
The narrow question before us in this proceeding is simply whether the developer and its contractor are entitled to summary judgment on the theory *567 that they owed no legal duty to plaintiff. Were this matter to go to trial, a jury could find either that these defendants were not negligent because the installation of the traffic signal was not unreasonably delayed or that, even if these defendants were negligent, such negligence was not a proximate cause of plaintiffs injuries. Further, a jury also could find that plaintiff himself or another defendant or defendants, rather than the developer or its contractor, should bear the major share of responsibility for the injuries. In my view, however, it is improper to conclude that a developer that agrees to install a safety measure as a condition of obtaining a permit owes no duty of care to the class of persons the safety measure is intended to protect, and that the contractor hired by the developer similarly owes no duty of care to those persons.
Accordingly, I would affirm the judgment of the Court of Appeal, which reversed the summary judgment entered in favor of defendants developer and contractor.

 Athough there is no evidence in this case that plaintiff was aware of, or relied upon, the developer’s commitment to install a traffic signal, under section 324A the relevant reliance may be either by the injured person or by the entity for which the developer undertakes to render the service, here, the city. The comment to section 324A states in this regard that “[w]here the reliance of the [city] . . . has induced [it] to forgo other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk.” (Rest.2d Torts, § 324A, com. e, p. 144.)