Filed 8/18/15  Venuto v. State of California Dept. of Transportation CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DEBORAH VENUTO et al., | D066147 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00096643-CU-PO-CTL) |
| STATE OF CALIFORNIA DEPARTMENT OF TRANSPORTATION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Williams Iagmin and Jon R. Williams for Plaintiffs and Appellants.

Jeanne E. Scherer, Jeffrey R. Benowitz and Julie E. Saake for Defendant and Respondent State of California Department of Transportation.

Jan I. Goldsmith, City Attorney, and Bonny Hsu, Deputy City Attorney, for Defendant and Respondent City of San Diego.

Nicholas Venuto was riding his bicycle on a bike path that parallels sections of California State Route 56 (SR-56) when he was struck and tragically killed by a driver who had been traveling along SR-56 and lost control of her car. The car struck the embankment, overturned and slid up the embankment, and then breached a chain-link fence separating the bike path from the embankment before it traveled along the path and struck Venuto and another rider. Venuto's heirs (collectively plaintiffs) filed this action against, among others, the State of California Department of Transportation (Caltrans) and the City of San Diego (City) alleging there was a dangerous condition at the location of the accident that permitted recovery against the governmental entities under Government Code[1] section 835. The trial court entered summary judgment against plaintiffs and in favor of Caltrans and City, finding as a matter of law those entities were shielded from liability by the absolute immunities provided under section 830.6 (the so-called "design immunity") and section 831.4 (the so-called "trail immunity").

Plaintiffs' appeal asserts there were triable issues of material fact precluding summary judgment, and therefore it was error to grant the summary judgment motions filed by Caltrans and City.

---

[1] All further statutory references are to the Government Code unless otherwise specified.

# I

## FACTUAL BACKGROUND[2]

### A. The Accident

On May 21, 2011, Ms. Saranita was driving eastbound on SR-56 in the number two lane approaching the interchange with Camino Del Sur. She decided to change from the number two lane into the number one lane, to avoid conflicts with cars potentially entering the freeway from Camino Del Sur. She checked her rear view and side view windows and began to move left into the number one lane. However, as she was transitioning, she saw something in her left peripheral vision, jerked her wheel and overcorrected, and lost control of her car.

Her car went across the merge lane (for cars entering eastbound SR-56 from Camino Del Sur) and across the right-hand shoulder. The car struck the small drainage curb at the southern edge of the shoulder, flipped over, and continued up an eight-foot high embankment planted with ice plant. The car's momentum carried it up the embankment, where it then crashed through the chain-link fence (which separated the paved bike path from the embankment) at the top of the embankment. The car then continued along the bike path where it struck the victims approximately 456 feet east of the Carmel Mountain Road overpass.

---

[2] Our factual background, drawn from the papers filed in support of and in opposition to the motions for summary judgment, is stated in the light most favorable to plaintiffs. (*LPP Mortgage v. Bizar* (2005) 126 Cal.App.4th 773, 775-776 [court must consider evidence and inferences in the light most favorable to party opposing summary judgment].)

B. <u>The Configuration of the Accident Location</u>

SR-56 is an east-west full access controlled freeway with two eastbound travel lanes.  At the accident site, it also has a third eastbound merge lane that provides ingress onto the freeway from the Camino Del Sur interchange.  At the location of the accident, there is a paved bicycle lane south of and parallel to the freeway.  This portion of the bicycle lane is separated from the travel lanes of the freeway by the merge lane, plus a paved shoulder in excess of 10 feet wide to the south of the merge and travel lanes, plus an approximately 20-foot wide, landscaped embankment that slopes upward from the freeway to the bicycle lane (with an approximate rise of eight feet from the southern edge of the shoulder to the level of the bike path), and a six-foot high chain-link fence separating the embankment from the bicycle lane.  Along the southern edge of the shoulder, separating the shoulder from the lower edge of the embankment, is a six-inch high "Type A" dyke designed to channel water along the shoulder to be collected at drainage inlets and prevent erosion of the embankment.

C. <u>The Design and Construction Process for the Accident Site</u>

SR-56, an approximately 10-mile highway connecting Interstate 5 on the west with Interstate 15 on the east, was constructed in phases.  The accident occurred in the segment of SR-56 built during the phase of construction that extended SR-56 westerly from east of Black Mountain Road to west of Carmel Mountain Road (the Project).  The Project was implemented through a series of cooperative agreements between City, Caltrans and the San Diego Association of Governments.  City was designated as the lead agency responsible for designing, financing and constructing the Project, and it hired

4

Boyle Engineering Corporation to design and build the Project. Caltrans retained oversight and approval of the Project to assure its design and construction conformed to Caltrans standards in compliance with the Highway Design Manual (HDM).

As originally planned, the Project's westerly limit was at Carmel Mountain Road, and construction of the interchange at Camino Del Sur (then called Camino Ruiz) was slated for a later project phase. The design plans for this iteration of the Project were approved by a resolution of the city council of City in July 1999, and were subsequently approved in September 1999 by City's engineering and capital projects department. Construction began in January 2000. However, soon after work on the Project commenced, the involved agencies determined it was advantageous to extend the limit of the work, thereby expanding the Project farther west, to include building the interchange at Camino Del Sur as part of the phase comprising the Project. This supplemental work, denoted in Specification 7082A1, became known as Supplement A.

In March 2001, the city council of City adopted a resolution approving the amendment to the Project encompassing the extension of the construction westerly and including the interchange and ramp at Camino Del Sur, and authorized City to enter into a cooperative agreement with Caltrans for this construction. After the Project was approved by the city council of City to include this expanded work, certain of the plan sheets (which had been approved in 1999 containing design details for future contemplated phases of SR-56) were replaced to show this expanded work was now part of the Project. The pertinent replacement design plan sheets were prepared and approved by Boyle in August 2001, and therefore the pertinent original plan sheet (designated as

5

Sheet L-3) was replaced by new Sheet L-3a dated August 29, 2001. City engineer Frank Belock reviewed and approved the design changes represented in Supplement A on August 29, 2001.

Construction of the Camino Del Sur interchange did not commence until after the design plans reflected in Supplement A had received the above approvals.[3] The Project was constructed according to these design plans and was completed in October 2003. It is Caltrans's custom and practice to have the resident engineer responsible for a particular state highway project provide Caltrans with a set of final as-built plans to verify the project was built according to the plans and in conformity with applicable design standards. By affixing his as-built stamp to the contract's design plans, that resident engineer is certifying the project was built according to the plans and in conformity with applicable design standards, including the HDM. City was responsible for providing final as-built plans to Caltrans's Project resident engineer, and the as-built plans for this project bear the stamp of resident engineer Etezadi, affixed on October 23, 2003.[4]

---

[3]     Although plaintiffs dispute these facts, we explain below why plaintiffs' attempt to raise a dispute as to these facts is without substance.

[4]     During the as-built certification process, Supplement A plan sheets were collated into the original set, with revised sheets identified by adding an "a" to the sheet number and replaced sheets identified by drawing through with an "x." Accordingly, revised layout sheet L-3 was designated as L-3a and an X was placed through the original sheet L-3. Etezadi inadvertently did not include the revised pavement delineation sheet (PD-1) in the as-built plan set, but the pavement delineation was actually constructed in accordance with the plan sheet PD-1 approved by Belock in August 2001.

## II

## PROCEDURAL BACKGROUND

A. <u>Plaintiffs' Complaint and Theory of Liability Against Caltrans and City</u>

*The Complaint*

Plaintiffs filed a complaint, naming as defendants Caltrans and City, among others, alleging Caltrans and City were liable for creating or maintaining a dangerous condition on public property.

*The Theories of Liability*

Plaintiffs' complaint against Caltrans and City alleged the portion of the bicycle path on which Mr. Venuto was killed and the portion of SR-56 adjoining that portion of the bicycle path constituted a dangerous condition as the result of its unreasonable and dangerous design including, but not limited to, the absence of adequate safeguards for users of the path. Plaintiffs' theory below was apparently that the layout of the freeway and its proximity to the bicycle path, when coupled with absence of positive barriers (such as a metal guardrail or concrete barrier) protecting the bicycle path from the freeway, made the configuration a dangerous condition.

B. <u>The Summary Judgment Motions</u>

*The Motions*

City moved for summary judgment. City argued it was protected from liability based on the so-called "trail immunity" statute (§ 831.4) and the so-called "design

immunity" statute (§ 830.6).[5]  Plaintiffs opposed the motion, arguing that there were triable issues of fact as to design immunity because there were triable issues of fact on whether the segment of SR-56 at issue (1) was built in accordance with a prior approved design plan, or (2) was approved by a person with authority to provide approval, or (3) presented an unreasonable risk of harm to users of the bicycle path.[6]  Plaintiffs also asserted the "trail immunity" statute was irrelevant because they contended it was the design of SR-56 and its lack of protective barriers that created the dangerous condition. Caltrans also moved separately for summary judgment, arguing it also was protected from liability based on the "design immunity" statute (§ 830.6).  Plaintiffs opposed the motion, asserting the same purported triable issues of fact that precluded summary judgment on City's design immunity defense also was fatal to Caltrans's motion.

The court, after sustaining a series of evidentiary objections to plaintiffs' evidence and overruling many of plaintiffs' objections to evidence filed by City and Caltrans filed in support of their motions for summary judgment, granted Caltrans's and City's

---

[5]    City also asserted there was no dangerous condition because there was no evidence SR-56 and the bicycle path posed a danger when used with due care.  We need not address this alternative contention because, for the reasons discussed below, we agree with the trial court that City is protected by design immunity.

[6]    Plaintiffs also argued, apparently for the first time in opposition to the summary judgment motions, that there were "changed conditions" that rendered unreasonable the prior approved design, defendants were on notice of the newly hazardous condition, and defendants had a reasonable opportunity to carry out necessary remedial work.

motions.[7]  The court found, based on the admissible evidence filed in support of the summary judgment motions, the undisputed facts demonstrated that Caltrans was entitled to the protections of the design immunity statute and City was entitled to the protections of the design immunity and trail immunity statutes.

II

APPLICABLE PRINCIPLES

A. General Principles Concerning a Dangerous Condition of Public Property

Section 835 provides that a public entity is "liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by

---

[7]     Plaintiffs do not on appeal claim the evidentiary rulings actually made by the court were erroneous, and we therefore deem any claim of error as to those rulings waived and assume all that evidence to have been properly excluded.  (See, e.g., *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014-1015.)  However, plaintiffs also moved to strike certain supplemental evidence filed by Caltrans and City in their replies in support of their summary judgment motion, and plaintiffs on appeal, although suggesting vaguely it was "unfair" to consider this supplemental evidence, do not explain how consideration of this supplemental evidence was an abuse of discretion.  (See *Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8 [court has discretion to consider new evidence submitted in reply brief in determining whether the moving party met its initial burden on summary judgment motion]; *Weiss v. Chevron, U.S.A., Inc.* (1988) 204 Cal.App.3d 1094, 1098-1099 [same].)  Because the court concluded the evidence was not new matter but was lodged to rebut arguments made by plaintiffs and therefore overruled plaintiffs' objections, and plaintiffs do not on appeal attempt to satisfy their burden of showing an abuse of discretion in this ruling, we deem that claim abandoned.  (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 698 [appellate court presumes the trial court's order was correct and appellant has burden to overcome presumption and establish clear abuse of discretion; failure to offer argument as to why court's ruling was beyond bounds of reason, citing only general principles governing such motions without applying those principles to circumstances before court, permits appellate court to deem claim abandoned].)

the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

However, the statutory scheme also provides governmental entities with certain immunities from liability.  As relevant here,[8] section 830.6 provides for immunity when the plaintiff alleges his or her "injury [was] caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or

---

8     Plaintiffs concede on appeal that they do not claim Venuto was injured because of any danger presented by the design or condition of the bicycle trail itself, but instead limit their argument to the claim that Venuto was injured by a dangerous condition created by the design of SR-56, and the bicycle trail was merely property "adjacent" to the dangerous condition.  Although it appears the trial court correctly ruled the trail immunity statute also applied to immunize City from liability, it is unnecessary to examine that statute because plaintiffs eschew any claim Venuto was injured because of the dangerous design or condition of the bicycle trail itself.

other body or employee could have approved the plan or design or the standards therefor." A public entity claiming design immunity must establish three elements: "(1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction [or that the plan or design was prepared in conformity with standards previously so approved]; and (3) substantial evidence supporting the reasonableness of the plan or design." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 68-69 (*Cornette*).)

B. <u>Standard of Review</u>

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc. § 437c, subd. (c).) When evaluating a defendant's motion for summary judgment, "the statute instructs that such a party 'has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' (Code Civ. Proc., § 437c, subd.(p)(2).)" (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1346 (*Cerna*).)

An appellate court reviews de novo a trial court's decision to grant a summary judgment motion. (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261.) In independently reviewing the propriety of an order granting summary judgment, the

11

appellate court reviews the ruling of the trial court, rather than its rationale.  (*Aaitui v. Grande Properties* (1994) 29 Cal.App.4th 1369, 1373.)

The defense of design immunity may be resolved on a motion for summary judgment.  (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 939-940 (*Grenier*).)  Both the causation element and the discretionary approval element may be resolved as an issue of law when the material facts pertaining to those elements are undisputed.  (*Ibid.*)  As to the first element, the defendant may rely on the allegations of the complaint to show the plan or design on which its design immunity defense is predicated was the cause of the accident.  (*Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 550); *Cerna, supra,* 161 Cal.App.4th at pp. 1349-1350 [pleadings limit the issues on motion for summary judgment].)  As to the second element, discretionary approval "simply means approval in advance of construction by the legislative body or officer exercising discretionary authority" (*Ramirez v. City of Redondo Beach* (1987) 192 Cal.App.3d 515, 526 (*Ramirez* )) and "[a] detailed plan, drawn up by a competent engineering firm, and approved by a city engineer in the exercise of his or her discretionary authority, is persuasive evidence of the element of prior approval."  (*Grenier,* at p. 940.)

The third element—whether substantial evidence supports the reasonableness of plan or design—is particularly amenable to summary judgment because it always presents a question of law.  (See, e.g., *Cornette, supra*, 26 Cal.4th at p. 72 ["[s]ection 830.6 clearly makes the resolution of the third element of design immunity, the existence of substantial evidence supporting the reasonableness of the adoption of the plan or design, a matter for the court, not the jury"].)  Indeed, the statute provides immunity

when there is *any* substantial evidence of reasonableness, even if contradicted (*Grenier, supra*, 57 Cal.App.4th at p. 940), because "[t]he rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design. [Citation.] ' " '[T]o permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested.' " [Citation.]' " (*Cornette,* at p. 69.)

### III

### ANALYSIS

We address two separate issues: first, did the trial court err when it concluded City and Caltrans had established there was no triable issue of material fact concerning the three elements necessary to establish design immunity; and, second, did the trial court properly determine there was no triable issue of fact with respect to the plaintiffs' contention that changed circumstances resulted in a loss of design immunity.

A. Design Immunity Was Established As a Matter of Law

We conclude the trial court correctly granted summary judgment on the design immunity defense because plaintiffs submitted no competent evidence raising a triable issue of material fact on any of the three elements required for design immunity.

13

*The Causation Element*

City and Caltrans properly demonstrated the first element by relying on the allegations of plaintiffs' complaint that the plan or design on which its design immunity defense is predicated was the cause of the accident. (*Alvis v. County of Ventura, supra,* 178 Cal.App.4th at p. 550; *Cerna, supra,* 161 Cal.App.4th at pp. 1349-1350.) Plaintiffs' complaint alleged that "the portion of SR[-]76 parallel with and adjacent to [the bike path where Mr. Venuto was killed] were and are in a dangerous condition as a result of a dangerous and unreasonable design, including but not limited to inadequate safeguards . . . [and] [a]s a direct and proximate result of the unreasonably dangerous condition, Mr. Venuto was struck and killed by a vehicle that left the freeway . . . ." The trial court correctly concluded there was no triable issue of fact on the first element of design immunity—"a causal relationship between the plan or design and the accident" (*Cornette, supra,* 26 Cal.4th at p. 69)—and the first element was established as a matter of law.

Plaintiffs appear to assert there was a triable issue of fact *as to causation* by arguing they submitted evidence a causative factor in the accident was an element not shown on the design plans. Even assuming this evidence was not stricken,[9] plaintiffs' argument would pertain to the second element (whether the improvement as built was

---

[9] Plaintiffs submitted a declaration averring that one of the landscaping materials chosen to line the slope "did not help slow [Saranita's] vehicle as it traveled up the slope" and was not shown on the plans submitted by City and Caltrans as the approved design for the area of the accident. However, the trial court sustained objections to this evidence, and because plaintiffs make no argument that this evidence was erroneously excluded (see fn. 7, *ante*) we do not consider this claim on appeal.

14

*approved*) rather than to whether there was a causal nexus between the improvement and the accident.  (See, e.g., *Cameron v. State of California* (1972) 7 Cal.3d 318, 326 [where state merely showed governing body "vested with discretionary authority" approved a design but design contained no mention of superelevation, the superelevation as constructed did not result from the design or plan introduced into evidence that had been approved by governing body and therefore denying design immunity would not require a "reexamination of a discretionary decision in contravention of the design immunity policy because there has been no such decision proved"].)

*The Approval Element*

The discretionary approval element may be resolved as an issue of law if the material facts pertaining to the element are undisputed.  (*Grenier, supra*, 57 Cal.App.4th at p. 940.)  This element "simply means approval in advance of construction by the legislative body or officer exercising discretionary authority."  (*Ramirez, supra,* 192 Cal.App.3d at p. 526.)  The burden on the prior approval element can be satisfied when there is evidence that, prior to construction, there was "[a] detailed plan, drawn up by a competent engineering firm, and approved by a city engineer in the exercise of his or her discretionary authority."  (*Grenier,* at pp. 940-941.)  Although the design plan must be "sufficiently explicit to assure that it is understandable to the employee giving the approval" (*Thomson v. City of Glendale* (1976) 61 Cal.App.3d 378, 385), the law imposes "no requirement that the design be expressed in any particular form . . . [nor any] requirement under section 830.6 that the design be prepared by a public employee.  It is

15

standard practice to have construction plans and designs for public works prepared by private technicians." (*Ibid*.)

As previously discussed, the design plans for the original iteration of the Project, as approved by a resolution of the city council of City in July 1999 and subsequently approved in September 1999 by City's engineering and capital projects department, contemplated the Project's westerly limit to end at Carmel Mountain Road with construction of the interchange at Camino Del Sur (then called Camino Ruiz) slated for a later project phase. When construction began in January 2000 on this iteration of the Project, plaintiffs correctly note there were no approved detailed plans for the Camino Del Sur interchange.

However, soon after construction began on the approved iteration of the Project, the involved agencies determined to extend the limit of the work and expand the Project farther west to include building the interchange at Camino Del Sur as part of the Project. The city council of City adopted a resolution approving the amendment to the Project encompassing the extension of the construction to include the interchange and ramp at Camino Del Sur, authorized City to enter into a cooperative agreement with Caltrans for this construction, and detailed plans for this supplemental work (Supplement A) were then prepared by Boyle in August 2001, and approved by Belock, City's engineer, on August 29, 2001. Construction on the interchange and ramp at Camino Del Sur did not begin until after all of the above approvals had been obtained, and the Project (including the interchange and ramp at Camino Del Sur as reflected in Sheet L-3a dated August 29, 2001) was constructed according to these design plans and completed in October 2003.

16

The above chronology satisfied City's and Caltrans's burdens of showing the prior approval element, i.e., that, prior to construction, there was "[a] detailed plan, drawn up by a competent engineering firm, and approved by a city engineer in the exercise of his or her discretionary authority." (*Grenier, supra*, 57 Cal.App.4th at pp. 940-941; accord, *Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 734 [on motion for summary judgment, defendant's showing there was "a detailed plan, drawn up by a registered professional civil engineer, and approved by four district and State officials in the exercise of their discretionary authority is sufficient to establish the prior approval element of design immunity"], disapproved on other grounds by *Cornette, supra*, 26 Cal.4th at p. 74, fn. 3.)

Plaintiffs assert there were triable issues of fact on the prior approval element. Plaintiffs claim there were triable issues of fact on whether Sheet L-3a, which plaintiffs do not dispute *would* qualify as a detailed plan of the interchange and ramp at Camino Del Sur that *was* drawn by a competent engineering firm hired by City and *was* approved by a city engineer, actually received the necessary approvals before construction commenced on the interchange and ramp configuration at Camino Del Sur depicted in Sheet L-3a. Plaintiffs correctly note the approvals on Sheet L-3a were dated August 29, 2001, and then assert this fact is "vexing" because construction on the Project began in January 2000, from which plaintiffs assert the plans for the interchange and ramp configuration at Camino Del Sur could not have been approved before "that construction began." However, although plaintiffs are correct that construction on the overall *Project* began in 2000, City and Caltrans submitted evidence that construction *on the interchange*

17

*and ramp at Camino Del Sur* did not begin until *after* all of the approvals had been obtained for the plans depicted on Sheet L-3a , and plaintiffs cite no evidence raising a triable issue of fact as to whether construction on the relevant "dangerous condition" (i.e., the interchange and ramp configuration for Camino Del Sur) began before all of the approvals had been obtained.

We are also unconvinced by plaintiffs' other efforts to cobble together various snippets of disparate facts in an attempt to raise a triable issue of fact as to the prior approval element. For example, plaintiffs note the copy of Sheet L3-a attached to the motion for summary judgment includes an as-built stamp dated "10-01-03" and signed by engineer Etezadi, and argue the original August 2001 date and approval "cannot be accurate," particularly because the Project manager (Mr. Fernon) testified in deposition "that Exhibit 9, Layout Sheet L-3a, did not exist in August of 2001." However, Fernon testified "we prepared the [as-built] sheets . . . [¶] . . . [¶] . . . after construction" and explained that, although Exhibit 9 was "not part of the [as-built] plans in 2001[,] . . . *it did exist.*" Because the evidence was undisputed that the resident engineer responsible for a particular state highway project would provide Caltrans a set of final as-built plans after construction, affixed with an as-built stamp to the contract's design plans to certify the project *was* built according to the plans and in conformity with applicable design standards, the fact that the as-built plans for this project (bearing the stamp of resident engineer Etezadi affixed on October 23, 2003) did not exist until after construction was completed is irrelevant to the important inquiry: was the design contained in Sheet L-3a in existence, and did it receive prior approval, before construction was commenced? City

18

and Caltrans produced evidence demonstrating the answer to both questions was yes, and plaintiffs' effort to generate a dispute on those questions is unconvincing.[10]

We are convinced City and Caltrans amply satisfied the prior approval element with evidence demonstrating that detailed plans for the Camino Del Sur interchange existed and were approved by the necessary persons before construction on the alleged "dangerous condition" began, and because plaintiffs did not produce any competent evidence creating a triable issue of material fact on the prior approval element, this element of design immunity was established as a matter of law. (*Grenier, supra*, 57 Cal.App.4th at p. 940 [discretionary approval element may be resolved as an issue of law when material facts pertaining to the element are undisputed].)

*The Substantial Evidence of Reasonableness Element*

The final element of design immunity is whether there is substantial evidence to support a conclusion the design was reasonable. A public entity claiming a design immunity defense must present substantial evidence supporting the reasonableness of the plan or design. (*Cornette, supra*, 26 Cal.4th at p. 69.) This standard requires a court "to apply the deferential substantial evidence standard to determine whether any reasonable [public] official could have approved the challenged design. [Citation.] If the record

_____

10     For example, plaintiffs attempt to create some conflict between Belock's reply declaration in support of the motion for Summary Judgment and his deposition testimony. In his reply declaration, Belock averred he was the City engineer who "reviewed the design changes" represented in Supplement A and signed the title page for the interchange on August 29, 2001, and that "[o]ne of the approved design changes of Supplement A" was the design contained in what ultimately became labeled as Sheet L-3a.

contains the requisite substantial evidence, the immunity applies, even if the plaintiff has presented evidence that the design was defective." (*Arreola v. County of Monterey* (2002) 99 Cal.App.4th 722, 757.) Section 830.6 does not require a perfect design, but only requires a design that is reasonable under the circumstances. (*Hefner v. County of Sacramento* (1988) 197 Cal.App.3d 1007, 1014-1015.) "By deciding on a 'reasonableness' standard, the Legislature intended that government officials be given extensive leeway in their decisions concerning public property. [¶] A governmental entity . . . is entitled to rely on what is apparently competent advice in making legislative decisions. The fact that on hindsight that advice may prove to have been flawed is not a basis for imposing liability on the governmental entity." (*Ramirez, supra,* 192 Cal.App.3d at p. 525.) Accordingly, "as long as reasonable minds can differ concerning whether a design should have been approved, then the governmental entity must be granted immunity." (*Ibid*.)

The fact the design was approved by competent professionals can alone establish the reasonableness element. (*Ramirez, supra,* 192 Cal.App.3d at p. 526; accord, *Higgins v. State of California* (1997) 54 Cal.App.4th 177, 187.) The any substantial evidence standard can also be shown by evidence that the plan or design complied with prevailing standards (*Weinstein v. Department of Transportation* (2006) 139 Cal.App.4th 52, 59) or by evidence from an expert testifying as to the reasonableness of the design (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1267), and the mere fact the plaintiff produces a conflicting expert opinion will not warrant the forfeiture of design immunity because "[a] mere conflict in the testimony of expert witnesses provides no justification

20

for the matter to go to a lay jury who will then second-guess the judgment of skilled public officials."  (*Ramirez,* at pp. 525-526.)

As previously discussed, the design in this case was prepared by Boyle and approved by City's engineer Belock.  As this court recognized in *Compton v. City of Santee* (1993) 12 Cal.App.4th 591, 597 (*Compton*), this fact alone supports a finding of reasonableness.  In addition, City and Caltrans provided an expert declaration from Mr. Hull, a registered professional civil engineer with extensive experience in state highway design planning and traffic engineering, who stated the design of the alleged dangerous condition was reasonable under all of the circumstances and was consistent with the standards contained in the HDM, which provides independent grounds for the determination that the reasonableness element was demonstrated as a matter of law. (*Hefner v. County of Sacramento, supra,* 197 Cal.App.3d at p. 1015 ["[o]rdinarily, the opinion of a civil engineer as to the reasonableness of a design constitutes 'any' substantial evidence sufficient to support a design immunity defense under section 830.6"]; accord, *Laabs, supra*, 163 Cal.App.4th at pp. 1263-1264 [substantial evidence of the reasonableness of a design may be demonstrated by an expert's opinion].)

Plaintiffs, citing *Levin v. State of California* (1983) 146 Cal.App.3d 410, argue the expert opinion submitted by City and Caltrans is insufficient to warrant summary judgment on the reasonableness element.  However, in *Levin*, the evidence showed the design plan did *not* conform to state guardrail standards *or* take into account an additional dangerous condition, excessive steepness of a slope.  The *Levin* court, specifically noting the "silence of the state's experts" on those key issues, stated, "the mere fact that an

21

expert witness testifies that in his [or her] opinion, a design is reasonable, does not make it so." (*Id*. at p. 418.) Here, in contrast, Hull's opinion was *not* silent on the key issues but instead explained state standards *were* complied with: the bike path was located 6.1 meters from the edge of the eastbound outside shoulder pavement, a "distance far exceeding the minimum standard for which a physical barrier would be required." Moreover, the bike path was elevated approximately eight feet above the freeway, with a 2:1 upward slope, and was 30.5 feet from the edge of traveled way (ETW) of the freeway. He explained the absence of a positive barrier was reasonable because, even for urban frontage roads along freeways, the HDM guideline for the outer separation from the ETW of the frontage road to the ETW of the freeway is 26 feet without requiring a positive barrier, and because the ETW of the bike path was more than four feet greater than that HDM guideline for frontage roads, the absence of a positive barrier did not offend HDM guidelines. *Levin* has no application to this case. We conclude there are multiple grounds supporting the trial court's determination that the reasonableness element of design immunity was demonstrated as a matter of law.

B. The Changed Circumstances Claim

Plaintiffs contend there are triable issues of fact as to whether section 830.6's changed conditions exception to design immunity applies. As explained by this court in *Compton, supra*, 12 Cal.App.4th at page 598, "Design immunity under section 830.6 is not perpetual but may be lost as a result of changed circumstances which subsequently render the improvement dangerous, if the public entity has received actual or constructive notice thereof. [Citation.] If the approved design becomes dangerous by reason of any

22

change in conditions, and that fact is known to the public entity, the immunity will continue for only a reasonable period of time to allow the entity to obtain funds to carry out the remedial work of bringing the property back into conformity with a reasonable design or plan. [Citation.] Thus, there are at least two predicates to loss of design immunity: changed conditions and notice."

Plaintiffs asserted below that there was a doubling of traffic volume on SR-56, coupled with a statistically aberrant accident history, and therefore there were changed conditions and notice that would cause City and Caltrans to lose protections afforded by the design immunity statute. However, the only evidence submitted by plaintiffs in support of their claim that traffic volume on SR-56 had doubled between the time this segment opened and 2011 (the year of the accident) was a traffic volume report. Caltrans's specific objection to that exhibit was sustained and because plaintiffs make no assertion on appeal that excluding this exhibit was error, the record contains no competent evidence traffic doubled from the time the freeway segment opened. (See fn. 7, *ante*.) Moreover, although courts have recognized an increase in traffic volume can constitute a change in conditions (see, e.g., *Baldwin v. State of California* (1972) 6 Cal.3d 424, 427-431), "[i]f the approved design becomes dangerous by reason of [this] change in conditions" (*Compton, supra*, 12 Cal.App.4th at p. 598), some increase in traffic volume alone is insufficient to establish a change in conditions for purposes of the loss of design immunity (*Higgins v. State of California, supra,* 54 Cal.App.4th at p. 188), but instead must be accompanied by additional proof that the "change in traffic volume changes the state standards that apply." (*Weinstein v. Department of Transportation, supra,* 139

23

Cal.App.4th at p. 61.)  As *Weinstein* explained, when design immunity attached because the design was reasonable at its inception, it is the plaintiff's burden to produce substantial evidence that the design of the roadway at the accident location had subsequently become dangerous because of changed physical conditions.  (*Id*. at p. 61.) *Weinstein* observed that a showing limited to statistics demonstrating increased traffic will not suffice absent evidence the statistics "made the condition of the roadway at the accident location inconsistent with state standards or would have rendered it unreasonable for a public entity to approve the design of the roadway. . . .  [E]vidence [of] . . . increased traffic alone does not cause a roadway to 'no longer be in conformity with' its design or state standards unless a change in traffic volume changes the state standards that apply.  Plaintiffs produced no evidence that increased traffic volume alone mandated a median barrier under the applicable state standards, and they otherwise failed to support their claim of loss of design immunity with evidence that changed conditions had caused the accident location to become dangerous."  (*Id*. at pp. 60-61.)  The same rationale applies here: although traffic may have incrementally increased since SR-56 was fully opened, plaintiffs cite nothing on appeal suggesting they submitted evidence this change in traffic volume changed the applicable standards so that the accident location was no longer in conformity with its design or with the design standards for the location.

Plaintiffs also claimed the aberrant accident history supported their claim of a change of circumstances.  However, the court also sustained Caltrans's objections to the exhibits allegedly demonstrating the aberrant accident history and, because plaintiffs

24

again present no argument on appeal demonstrating that excluding this exhibit was error, we conclude plaintiffs produced no competent evidence the allegedly dangerous location actually had any aberrant accident history. Moreover, even if the exhibit had not been excluded, this evidence would not be sufficient to create a triable issue of fact as to changed conditions. Plaintiffs' exhibit purported to show that, between April 2005 and May 2011, there were numerous other vehicle incursions into the chain link fence running along the bike path between mile markers 3.1 and 7.8.[11] However, none of those other incursions occurred at the location of the accident site and, indeed, only four of the fence repairs listed in plaintiffs' "Bike Path Fence Collision Summary" occurred in the nearly two-mile stretch of SR-56 that brackets the accident site. It was incumbent on plaintiffs to show not merely that some accidents have occurred, but that there were *numerous* accidents at the site (see, e.g., *Dole Citrus v. State of California* (1997) 60 Cal.App.4th 486, 493-494 [one similar incident reported two years preceding accident insufficient]), *and* they occurred under *substantially similar circumstances* (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1072 ["[i]t is well-settled that before evidence of previous accidents may be admitted to prove the existence of a dangerous condition, it must first be shown that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in

---

11    We question whether plaintiffs' characterization of these exhibits—i.e., as showing numerous vehicle incursions from the freeway into the bike lane fence—is accurate. For example, although the document labeled "Bike Path Fence Collision Summary" *does* show numerous *repairs* to the fence during that period, only a few of those indicate *how* the fence was damaged.

question"]), *and* that the numbers were statistically aberrant (*Compton, supra,* 12 Cal.App.4th at p. 599 ["it was incumbent on [plaintiff] to show this rate was statistically aberrant, i.e., unusual or excessive in some respect"].)  Because plaintiffs' showing below did not demonstrate numerosity, similarity, or statistical aberrancy, plaintiffs did not create a triable issue of fact on whether there were changed conditions of which City and Caltrans were on notice for purposes of losing design immunity.  We conclude the trial court correctly held plaintiffs had not raised a triable issue of fact as to the loss of design immunity because of changed conditions.

DISPOSITION

The judgment is affirmed.  Defendants are entitled to costs on appeal.


McDONALD, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.


26